13 So.2d 710

## STATE v. PITTSBURGH TESTING LABORATORY CORPORATION.

No. 36896.

April 12, 1943.

Jorda S. Derbes, of New Orleans, for plaintiff and appellant.

Chaffe, McCall, Bruns, Toler & Phillips, of New Orleans, for defendant and appellee.

PONDER, Justice.

The Director of Revenue of the State of Louisiana brought a rule against the Pittsburgh Testing Laboratory Corporation to show cause why it should not be ordered to pay an occupational license tax in the sum of $630, covering the years 1938, 1939 and 1940 with 2% per month interest, as penalties, and 10% attorney's fees on principal and interest. The plaintiff also asked that a lien and privilege on all the property of the defendant be recognized and enforced in behalf of the State. In defense to the rule, the defendant denied the indebtedness and claimed that it was exempt from the tax under the provisions of Section 17 of Act 15 of the Third Extraordinary Session of 1934, as amended by Act No. 125 of 1940. Upon trial, the lower court dismissed the rule and rejected the plaintiff's demands. The matter is now submitted to us on appeal.

The question presented for our determination is whether or not a corporation engaged in carrying on or conducting general analytical chemistry, research chemistry, mechanical engineering, civil engineering and physical testing is exempt from occupational license tax.

The defendant corporation is chartered under the laws of Pennsylvania and domiciled in the City of Pittsburgh. It has several branch offices located in the different states. It has a local office and laboratory at 816 Howard Ave. in the City of New Orleans, Louisiana where it conducts analytical, physical and chemical testing. Of the twenty persons employed by the corporation in this State, only two are graduate chemists and two others hold correspondence school certificates. The remaining sixteen employees are either assistants or clerks.

Article X, Section 8, of the Constitution, as amended by Act 77 of 1934, provides:

"License taxes may be levied on such classes or persons, associations of persons and corporations pursuing any trade, business, occupation, vocation or profession, as the Legislature may deem proper, except clerks, laborers, ministers of religion, school teachers, graduated trained nurses, those engaged in mechanical, agricultural or horticultural pursuits or in operating saw mills."

Act 15 of the Third Extraordinary Session of 1934, as amended, provides that individuals, firms and corporations engaged in certain businesses or professions shall pay an occupational license tax. This Act, as amended, in no way encroaches upon the exemptions granted by the constitutional provision. However, it grants further exemptions from the tax in the following proviso set out in Section 17 of the Act, as amended, viz.:

"Provided that Attorneys-at-law, Accountants, Banks, Oculists, Physicians, Osteopaths, Dentists, Printers, Lithographers, Publishers, Editors, Bacteriologists, Veterinarians, Chemists, and Civil, Mechanical, Chemical and Electrical Engineers engaged in the practice of their profession

and not engaged in sales, and manufacturers, shall be exempted from any provisions of this Act."

The defendant claims that it comes within the exemptions granted by the above proviso and is thereby exempted from the tax.

■ "The object of plaintiffs' suit is to secure an exemption from taxation. Such an exemption is an exceptional privilege, and it must be clearly and unequivocally and affirmatively established, for it is an elementary rule of construction in our jurisprudence that exemptions are strictly construed." Pearce v. Couvillon, 164 La. 155, 113 So. 801, 803, and cases cited therein.

"There is no principle of interpretation more firmly and uniformly established by the jurisprudence of this and the other States than the unbroken rule that exemptions from taxation are to be strictly construed against the person claiming the exemption, and that any plausible doubt is fatal. 2 Cooley on Taxation, 4th Ed., § 672; and Judson on Taxation, 2d Ed., § 93." Mattingly v. Vial, 193 La. 1, 2, 190 So. 313, 315.

"A fundamental rule of statutory construction is that statutes granting tax exemptions are to be strictly construed because they grant an exceptional privilege, and the right to enjoy the exemption must be clearly, unequivocally and affirmatively established." Standard Oil Co. of Louisiana v. Fontenot, 198 La. 644, 4 So.2d 634, 643, and cases cited therein.

■ The statute exempts chemists and engineers engaged in the practice of their

professions from the payment of the tax. Undoubtedly, the law making body had in mind natural persons and not artificial beings. If it had intended to exempt corporations engaged in a business enterprise, which required the employment of chemists and engineers, it would have so stated or used some language indicating such intention. A corporation cannot be a chemist or practice a profession, and the mere fact that it is engaged in an enterprise that requires the services of chemists and engineers would in no sense make the corporation a chemist or an engineer. It is to be noted that in this same provision of the statute, the Legislature exempts banks from the tax. Banks necessarily imply corporations engaged in the banking business. It is significant that when the Legislature exempted a bank or a corporation, it used appropriate language to express such intent.

We had occasion to consider the exemptions granted under Section 8 of Article X of the Constitution in the case of State v. Up-To-Date Shoe Repairing Company, Inc., 175 La. 917, 144 So. 714, and we arrived at the conclusion that when this constitutional provision exempted clerks, laborers, ministers of religion, school teachers, graduated trained nurses and those engaged in mechanical pursuits the exemption applied only to natural persons. Following the same line of reasoning, "chemists and engineers engaged in the practice of their professions" unquestionably mean natural persons engaged in the practice of their professions.

The defendant contends that this Court in the case of State v. Caldwell Sugars,

Inc., 185 La. 503, 169 So. 526, 527, expressed views contrary to those above stated. It is true that it is said in that case that "it is conceded that Caldwell Sugars, Inc., is engaged in agricultural or horticultural pursuits, and is, therefore, exempt, under section 8 of article 10 of the Constitution of 1921, from the payment of an occupational license tax." This statement refers to a concession made by opposing counsel. Occupational license taxes were not at issue. The question at issue was whether or not the Caldwell Sugars, Inc. was exempt from the payment of a corporate franchise tax. It was held that the corporation was not exempt from the payment of the franchise tax imposed by statute. Consequently, that case is not pertinent to the issue in controversy herein.

The defendant contends, in event it is held that the corporation is not exempt from the occupational license tax, that it is only liable for 50% of the normal tax imposed by Section 17 of Act 15 of the Third Extraordinary Session of 1934, as amended.

From an examination of the Act, we find that the only provision in the statute applicable to the class of business conducted by the defendant is that contained in the following provision of Section 17:

"That every individual, firm, association or corporation carrying on the business or profession of engraver, photographer, decorator, architect, jeweler, or any other business or professional occupation, shall be graded according to the classification named above, but the license for the professions named in this paragraph shall be one-half of those established by the foregoing provisions of this section; provided that no license shall be issued hereunder for less than five dollars ($5.00)."

We are of the opinion that this provision would govern in arriving at the amount of taxes due by the defendant.

Under the provisions of Section 5 of Act 51 of 1942 when a taxpayer fails to pay any taxes due the State on or before the date that they become due, there shall be added 6% per annum interest from the due date until paid. The Act defines State tax to mean any tax, license, fee, permit, interest, penalty or other charge payable to and collectible by the Department of Revenue. It is provided in Section 7 that the Act shall be construed to apply to any State taxes collected after its effective date. Section 4 of the Act provides that when delinquent taxes are referred to an attorney for collection, there shall be an additional 10% on the tax, interest and other penalties, added as an additional penalty.

There seems to be no controversy over the amount of the gross receipts received by the defendant during the years 1937, 1938 and 1939. Computing the tax on the basis of these figures, the defendant owed taxes on March 1, 1938, in the amount of $85; on March 1, 1939, $110, and on March 1, 1940, $120. Under the provisions of Act 51 of 1942, the defendant is liable for 6% interest on these amounts from their due date until paid. The plaintiff is also entitled to recover the 10% additional penalty.

For the reasons assigned, the judgment of the lower court is set aside. The defendant, Pittsburgh Testing Laboratory Corporation is now ordered to pay the plaintiff, the Director of Revenue of the State of Louisiana, the sum of $315 together with 6% interest on $85 from March 1, 1938 until paid; 6% interest on $110 from March 1, 1939 until paid and 6% interest on $120 from March 1, 1940 until paid, and 10% on both principal and interest. All costs to be paid by the defendant.

ODOM, J., absent.